# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICKY L. FOOTE,
          *Petitioner-Appellant,*

v.

FRANKIE SUE DEL PAPA; E.K.
MCDANIEL,
          *Respondents-Appellees.*

No. 06-15094

D.C. No.
CV-02-00288-RCJ/
RAM

AMENDED
OPINION

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, Presiding

Argued and Submitted
November 17, 2006—San Francisco, California

Filed July 3, 2007

Before: J. Clifford Wallace and Sidney R. Thomas,
Circuit Judges, and David A. Ezra,* District Judge.

Opinion by Judge Wallace

---

*The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

7939

## COUNSEL

Paul G. Turner, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

David K. Neidert, Senior Deputy Attorney General, Criminal Justice Division, Reno, Nevada, for the respondents-appellees.

## OPINION

WALLACE, Circuit Judge:

Foote appeals from the district court's judgment denying his 28 U.S.C. § 2254 habeas corpus petition. We have jurisdiction to review the district court's judgment under 28 U.S.C. § 2253(a). *See Olvera v. Giurbino*, 371 F.3d 569, 572 (9th Cir. 2004). We review the judgment de novo, *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th Cir. 2003), and we affirm.[1]

---

[1]We affirm the district court's denial of Foote's remaining claims in a simultaneously-filed memorandum disposition.

# I.

## A. The Trial Testimony & Direct Appeal

In the early morning of February 1, 1987, Foote and a man who Foote later identified as his father (or father-in-law) entered the Mint Hotel in Las Vegas, Nevada. Jane Doe, Keith Taylor, and Foote's wife, Vicky, were seated together at a bar in the hotel. Foote and his father argued with Doe, Taylor, and Vicky. A security guard removed Foote and his father from the premises. Approximately 5:30 a.m., Vicky, Doe, and Taylor went to the Footes' apartment. Vicky and Doe went inside while Taylor remained outside in his car.

Doe testified at trial that she was drunk when she arrived at the apartment, where she and Vicky planned to gather some of Vicky's clothes. Doe also testified that they planned to lie to Foote, telling him that Vicky would spend the night at Doe's residence when in fact Taylor and Vicky planned to spend the rest of the night together. According to Doe, an argument erupted between the Footes. Brandishing a knife, Foote forced Doe to perform fellatio and had vaginal intercourse with her. Doe stated that after falling asleep for a time, she was able to leave the apartment with Vicky.

After the State rested its case, the trial judge asked, out of the presence of the jury, whether Foote had chosen not to testify in his own defense, and Foote responded, "Yes." The defense rested without calling any witnesses. In March 1988, following the trial, the court entered a judgment of conviction against Foote for battery with intent to commit a crime, sexual assault, and sexual assault with a deadly weapon. The Nevada Supreme Court dismissed Foote's direct appeal in January 1989.

## B. The Alleged Conflict of Interest

Chamberlain, a Deputy Public Defender in the Clark County Public Defenders Office (Public Defenders Office),

represented Foote at his May 1987 arraignment in this case. The following month, Foote filed a complaint in United States District Court for the District of Nevada naming Chamberlain and the Public Defenders Office as defendants. Foote alleged that Chamberlain "refused to ask [him] pertinent Questions"; that she "approached [him] . . . with a plea Bargain, even though [he] demanded [his] right to trial"; that "all efforts to contact Ms. Chamberlain to prepare his defense [were] futile"; that "Chamberlain refused to supply [him] with all copies of records concerning [his] arrest"; and that she thereby failed to afford him "all of [his] rights as guarante[ed by] the Constitution of the United States."

In July 1987, the Public Defenders Office filed a motion to withdraw as Foote's counsel, asserting that the lawsuit "cre-ate[d] a clear conflict of interest" and that Chamberlain could not "adequately represent the interests of [the] defendant." Apparently, the motion was granted and Foote's retained counsel, Cherry, replaced Chamberlain. In December 1987, the federal district court dismissed Foote's action against Chamberlain and the Public Defenders Office.

At the close of sentencing, Cherry and the judge engaged in the following dialogue:

> MR. CHERRY: Your Honor, may we have this on calendar next week so he can have a public defender file a notice of appeal in this matter. He is indi-gent and as he said, he is on dis-ability and he does want to appeal this and I think he should.
>
> THE COURT: There isn't any problem so the public defender could represent him on appeal.
>
> MR. CHERRY: I don't think there is a conflict. I think they represented him at one

time, but I want to make sure it's
on calendar so a notice is filed.

THE COURT:    All right.

The trial court subsequently ordered the re-appointment of the
Public Defenders Office to represent Foote in his direct
appeal.

In a habeas corpus petition filed in state court in 1990
(1990 State Petition), Foote pressed a claim of ineffective
assistance of appellate counsel based on the Public Defender's
alleged conflict of interest. Foote stated that he had written
"to the public defenders office and requested that they with-
draw from [his] appeal and that they request that the court
appoint new independent counsel," but that he "never did
receive a response to this letter" and thus "thought that there
was nothing further he could do." Foote also alleged that
appellate counsel failed to provide him with copies of briefs,
police reports, and the Nevada Supreme Court's order dis-
missing his direct appeal. Finally, Foote alleged that appellate
counsel failed to raise meritorious appellate issues. The
Nevada Supreme Court rejected Foote's "conflict of interest"
claim, characterizing the alleged conflict as merely a "*poten-
tial*" conflict, not an actual one.

## II.

Foote asserts a Sixth Amendment right to be represented by
conflict-free appointed appellate counsel. We apply the stan-
dards of the Antiterrorism and Effective Death Penalty Act
(AEDPA) to the Nevada Supreme Court's reasoned decision
denying the 1990 State Petition. *See Taylor v. Lewis*, 460 F.3d
1093, 1097 n.4 (9th Cir. 2006). Under AEDPA, we will grant
habeas relief if the state court decision was "contrary to, or
involved an unreasonable application of, clearly established
Federal law as determined by the Supreme Court." 28 U.S.C.
§ 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 405-409

(2000). This last phrase "refers to the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

[1] AEDPA requires that Foote's "conflict of interest" claim not implicate an "open question" in the Court's jurisprudence. *See Carey v. Musladin*, 127 S.Ct. 649, 653 (2006). While we have recognized that an "irreconcilable conflict" between a criminal defendant and his trial counsel may entitle a defendant to new counsel, *see United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998), no Supreme Court case has held that an "irreconcilable conflict" between the defendant and his appointed appellate counsel violates the Sixth Amendment. Nor has the Supreme Court held that a defendant states a Sixth Amendment claim by alleging that appointed appellate counsel had a conflict of interest due to the defendant's dismissed lawsuit against the public defenders office and appointed pre-trial counsel. Foote's "conflict of interest" claim thus fails.

*Cuyler v. Sullivan* does not save Foote's claim. *Sullivan* established that under the Sixth Amendment we will "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict in instances where assistance of counsel has been denied entirely or during a critical stage of the proceeding." 446 U.S. 335, 348, 350 (1980). We have described this principal as the "*Sullivan* exception" to the rule that a habeas petitioner must show prejudice in connection with his ineffective assistance of counsel claim. *See Earp v. Ornoski*, 431 F.3d 1158, 1183 (9th Cir. 2005); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (recognizing *Sullivan* exception). The *Sullivan* exception applies where the petitioner shows: (1) that his counsel actively represented conflicting interests; and (2) that this adversely affected his counsel's performance. *See id.* at 1182, *citing Sullivan*, 446 U.S. at 348. "To show an actual conflict resulting in an adverse effect, [the petitioner] must demonstrate that some plausible alternative defense strategy or tactic

might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) (quotations omitted).

The Supreme Court has never held that the *Sullivan* exception applies either to a defendant's "irreconcilable conflict" with his appointed appellate counsel or to such counsel's conflict of interest. Indeed, *Mickens* "explicitly concluded that *Sullivan* was limited to joint representation, and that any extension of *Sullivan* outside of the joint representation at trial context remained, 'as far as the jurisprudence of [the Supreme Court was] concerned, an open question.' " *Earp*, 431 F.3d at 1184, *quoting Mickens*, 535 U.S. at 176.

Foote's reliance on *Anders v. California,* which involved appointed counsel who failed to file a brief on behalf of his client on appeal, also does not help him. 386 U.S. 738 (1967). Counsel wrote to the court that he was "of the opinion that there is no merit to the appeal." *Id.* at 742. The Supreme Court held that this denied the defendant the right to appointed counsel guaranteed by *Gideon v. Wainwright*, 372 U.S. 335 (1963), because "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of an amicus curiae." 386 U.S. at 744. By contrast, Foote's counsel raised claims in the direct appeal.

*Entsminger v. Iowa* is similarly inapposite. 386 U.S. 748 (1967). There, the Court held that petitioner's appointed counsel had not "function[ed] in the active role of an advocate" because he failed to file the papers necessary to perfect a plenary appeal. *Id.* at 751. Counsel apparently did this because he believed petitioner's appeal lacked merit. *Entsminger* relied on *Anders*, which was issued the same day.

Finally, the holding of *United States v. Cronic* does not apply here. 466 U.S. 648 (1984). *Chronic* involved the

appointment of an inexperienced lawyer shortly before trial. The Tenth Circuit held that the defendant had received ineffective assistance of counsel solely based on the disparity between the government's and defense counsel's experience and time to prepare for trial. *Id.* at 650. The Supreme Court reversed, holding that the test for effectiveness is the lawyer's actual performance, not extrinsic factors such as time to prepare or degree of experience. *Id.* at 663-66.

**[2]** Neither *Sullivan, Anders*, *Entsminger,* nor *Cronic* stand for the proposition that a criminal defendant states a Sixth Amendment claim by alleging either an "irreconcilable conflict" with his appointed appellate counsel or that such counsel had a conflict of interest based on the petitioner's dismissed lawsuit against the public defender's office and appointed pre-trial counsel. Therefore, the Nevada Supreme Court's rejection of the conflict of interest claim was neither contrary to, nor an unreasonable application of, established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

**AFFIRMED.**